UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NEXT REALTY, LLC,

                      Plaintiff,

-against-

NEXT REAL ESTATE PARTNERS LLC;
NEXT RE CAPITAL LLC; NEXT RE
CAPITAL MARKETS LLC;
NEXTRE PROPERTIES GROUP LLC d/b/a
NEXT RE PROPERTIES GROUP LLC; and
NEXT RE TECHNOLOGIES LLC,

                      Defendants.
-------------------------------------------------------------X

**REPORT & RECOMMENDATION**

16-CV-6327 (JS) (GRB)

**GARY R. BROWN, United States Magistrate Judge:**

Before the undersigned is a renewed motion for default judgment and the imposition of permanent injunctive relief by plaintiff Next Realty, LLC ("plaintiff" or "Next Realty"), against defendants, Next Real Estate Partners LLC; Next Re Capital LLC; Next Re Capital Markets LLC; NextRe Properties Group LLC d/b/a Next Re Properties Group LLC; and Next Re Technologies LLC, (collectively "defendants"[1]), which was referred to the undersigned by the Honorable Joanna Seybert for report and recommendation. Docket Entry ("DE") 45; Electronic Order dated October

---

[1] As noted in defendants' memorandum of law, "Next RE Property Management LLC and Next RE Specialty Finance, LLC (collectively referred to as the "Non-served Defendants") could not be served, as they are not registered with the New York State Secretary of State and thus do not appear to be valid limited liability companies. Thus, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice (Dkt. 22), and the Non-served Defendants have been dismissed without prejudice (Dkt. 23)." DE 45-4 at 2, n. 1. To avoid confusion, the Non-Served Defendants have been removed from the caption of the first Report and Recommendation, and plaintiff properly removed any reference to the Non-Served Defendants from its papers and Proposed Judgment.

1

11, 2018.  For the reasons stated herein, the undersigned respectfully recommends that the default judgment motion be granted, and the proposed judgment be entered after modification consistent with the matters discussed herein.

## BACKGROUND

In sum and substance, Next Realty, the holder of trade names and service marks, including eight federally registered service marks all starting with the word "NEXT" and used in real estate brokerage, brings this case against defendants for use of a series of virtually indistinguishable trade names similarly beginning with the word "NEXT" as well as confusingly-similar Internet domain names.  *See generally* DE 45-4.  Plaintiff commenced this action with the filing of a complaint on November 14, 2016, which appears to have been properly served.  *See* DE 1, DE 14–16.  No answer was filed, or other response made, so upon application of the plaintiff, the Clerk of the Court noted the default.  DE 19.

Plaintiff filed its first motion for default judgment on April 7, 2017, which was referred to the undersigned.  DE 28, 38.  The undersigned issued a report and recommendation largely granting the relief sought.  DE 39.  However, shortly thereafter, the Court received notice via letter that defendants' attorney was under investigation for professional misconduct and had resigned from the practice of law.  DE 41–42.  As a result, the undersigned issued an order withdrawing the report and recommendation, deeming the plaintiff's motion withdrawn but permitting refiling within sixty days if appropriate.  Order dated February 28, 2018.  That order, which was served on defendants by overnight mail, specifically cautioned defendants that failure to promptly obtain counsel would likely result in a default judgment.  *Id.*; *see also* DE 43.  Notably, defendants obtained new counsel who filed a Notice of Appearance in this matter on April 24, 2018, but filed no timely opposition to the instant motion.  DE 44; Electronic Order

dated September 4, 2018.  No further response was received, and plaintiff filed the instant motion on May 1, 2018, consistent with the Court's directive.  DE 45.  Defendants, now represented by counsel, again failed to timely respond, but then belatedly moved for additional time to partially oppose plaintiff's renewed motion, which Judge Seybert denied.  DE 48–49; Electronic Order dated September 4, 2018.  Thus, this instant motion is effectively unopposed.[2]

## DISCUSSION

### A. Procedural Prerequisites

Federal Rule of Civil Procedure ("Rule") 55 offers a two-step process for obtaining a default judgment.  *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011) ("When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention.").  Plaintiff's first step, under Rule 55(a), is to seek an entry of default from the Clerk of the Court.  *Id*. at 505; Fed. R. Civ. P. 55(a).  The second step

> requires the plaintiff to seek a judgment by default under Rule 55(b).  Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear.  In all other cases Rule 55(b)(2) governs.  It requires a party seeking a judgment by default to apply to the court for entry of a default judgment.

*Preistley*, 647 F.3d at 505.

Plaintiff has satisfied the procedural prerequisites here.  On February 4, 2015, defendants having failed to respond to the complaint despite service of such, the Clerk of the Court noted defendants' default.  DE 9, 10, 12, 13.  Plaintiff filed its motions for default judgment on May 26, 2015, and September 4, 2018, thereby satisfying the second step.  DE 14.  Plaintiff has filed a

---

[2] Significantly, counsel for defendants represented that "Defendants no longer oppose plaintiff's request for money damages or injunctive relief," but sought only to oppose an award of legal fees.  DE 49.

3

renewed motion for default judgment. DE 19. On September 7, 2018, this motion was referred to the undersigned for Report and Recommendation by the Honorable Joanna Seybert. Electronic Order dated September 4, 2018. This decision follows.

### B. Liability

Defendants' default constitutes "an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1–800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Nevertheless, the court is "required to determine whether the [plaintiff]'s allegations establish [defendants]' liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Based upon examination of the complaint and motion papers, the undersigned finds that plaintiff has demonstrated that the uncontroverted allegations, without more, establish the defendants' liability for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), respectively.

*Federal Service Mark Infringement and Unfair Competition under the Lanham Act*

A plaintiff's registered mark is protected from infringement under 15 U.S.C. § 1125. A plaintiff claiming infringement thereunder must prove that plaintiff's mark is protected and that defendant's use of the protected mark in connection with a sale or advertising of goods or services is likely to cause consumer confusion. *Id.*; *see Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014). Registration of a plaintiff's mark with the United States Patent and Trademark Office ("USPTO") is *prima facie* evidence of the mark's protection. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001); *see Lemme v. Nat'l Broadcasting Co., Inc.*, 472 F. Supp. 2d 433, 442-43 (E.D.N.Y. 2007). In determining the likelihood of confusion, courts are guided by the following eight factors: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence

4

that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114-15 (2d Cir. 2009) (citing *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384 (2d Cir. 2005)); *see Innovation Ventures, LLC v. Ultimate One Distribut. Corp.*, 176 F. Supp. 3d 137, 153 & n.12 (E.D.N.Y. 2016).

A claim for unfair competition is analyzed under the same standards as a trademark infringement claim. *See Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 378-79 (S.D.N.Y. 2015) ("Claims of trademark infringement, 15 U.S.C. § 1114(1), and unfair competition, 15 U.S.C. § 1125(a), are evaluated under the same two-part test . . . ."); *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272-73 (E.D.N.Y. 2014) (dismissing plaintiff's Lanham Act unfair competition claim as "duplicative" of the also dismissed Lanham Act trademark infringement claim); *Tactica Int'l, Inc. v. Atl. Horizon Int'l*, 154 F. Supp. 2d 586, 597 n.14 (S.D.N.Y. 2001) ("Because [plaintiff]'s claims of unfair competition and trademark infringement (for unregistered trademarks) under Section 43(a) of the Lanham Act are one in the same, they need not be addressed as separate causes of action.").

Taking plaintiff's well-pleaded allegations as true, plaintiff has clearly shown its entitlement to relief under both claims. Plaintiff alleges that it owns several service marks registered with the USPTO, establishing plaintiff's entitlement to protection.

Moreover, there is a clear likelihood of confusion between plaintiff's registered trademark and defendants' allegedly infringing use of such. Not only do the allegations set forth sufficient facts to establish infringement, but even a cursory examination of the marks and domain names

5

used by the parties reveal an obvious likelihood of confusion particularly given the competitive proximity of use.

The undersigned finds that the factual allegations sufficiently established a likelihood of confusion between the parties' marks. Plaintiff has therefore adequately pleaded claims for service mark infringement, unfair competition and cybersquatting, and the undersigned respectfully recommends that default judgment be granted in its favor.

### C. Damages

"To establish damages upon a default, the movant need only prove that the 'compensation sought relate[s] to the damages that naturally flow from the injuries pleaded.'" *OneWest Bank, N.A. v. Bianchini*, No. CV 14-3234 (DRH) (GRB), 2016 WL 1039491, at *2 (E.D.N.Y. Feb. 22, 2016), *adopted by*, 2016 WL 1045533 (E.D.N.Y. Mar. 15, 2016) (citing *Greyhound Exhibitgrp., Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Based upon a review of affidavits and other documentary evidence, *see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp*, 109 F.3d 105, 111 (2d Cir. 1997) (court may rely upon affidavits and documents in calculating damages upon default), the undersigned finds that plaintiff has established its right to money damages. Calculation of damages is difficult, in large part due to defendants' default. However, on this application, plaintiff seeks money damages only for the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA").

The ACPA provides, in lieu of actual damages and lost profits, for the award of statutory damages of a "just" amount, ranging from $1,000 to $100,000 per violation. 15 U.S.C. § 1117(d). Plaintiff, which has provided some evidence of willfulness (including continued misuse of the subject domains and marks after clear notice of this action), seeks an award of $10,000 for each of the seven offending domain names. DE 45-4 at 19–20. Given the circumstances here,

the undersigned believes this request is modest and reasonable, and therefore respectfully recommends the imposition of statutory damages of $70,000. Again, defendants do not oppose the imposition of liability and the damages sought. DE 49.

### *Injunctive Relief*

A permanent injunction is proper "following a default judgment so long as the moving party shows that 'it meets the prerequisites for issuance of an injunction,'" *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 298-99 (E.D.N.Y. 2015) (quoting *Harris v. Fairweather*, No. 11 Civ. 2152, 2012 WL 3956801, at *9 (S.D.N.Y. Sept. 10, 2012)), and the moving party shows it "is entitled to injunctive relief under the applicable statute." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-0946(JS)(AKT), 2015 WL 1299259, at *16 (E.D.N.Y. Mar. 23, 2015) (citing *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 118 (E.D.N.Y. 2010)). As to the first requirement, a court may issue an injunction where plaintiff demonstrates "actual success on the merits and irreparable harm." *Mun. Credit Union*, 126 F. Supp. 3d at 299 (internal quotations omitted).

Defendants' default establishes plaintiff's success on the merits. *See Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 159 (E.D.N.Y. 2010); *Philip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 675 (S.D.N.Y. 2009). Further, "[i]n a trademark case, irreparable injury is established where 'there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'" *Rolls-Royce PLC*, 688 F. Supp. 2d at 159-69 (quoting *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987)); *see Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F. Supp. 2d 201, 205-06 (E.D.N.Y. 2008). In evaluating the sufficiency of plaintiff's service mark infringement and unfair competition claims,

the undersigned has concluded that there is a strong likelihood of confusion based upon the uncontested factual allegations. Moreover, a permanent injunction is proper here as the Lanham Act authorizes the issuance of an injunction "to prevent the violation of any right of the registrant of a mark registered in the [USPTO] . . . ." 15 U.S.C. § 1116(a). Further, plaintiff seeks an order, as authorized under the ACPA, transferring the subject domain names to plaintiff, as well as destruction of advertising materials that violate plaintiff's service mark, all of which is authorized under law and appropriate under the circumstances. Finally, defendants do not oppose the injunction. DE 49. Therefore, the undersigned respectfully recommends that the permanent injunctive relief sought be granted.

### D. Attorneys' Fees and Costs

Finally, Next Realty seeks recovery of attorneys' fees and costs, which are authorized under 15 U.S.C. § 1117(a) for "exceptional" cases. On the issue of costs, this Court has previously held:

> The Lanham Act provides for costs as an element of monetary recovery. *See* 15 U.S.C. § 1117(a). "Courts generally award costs to prevailing parties in cases involving violations of the Lanham Act." *Prot. One Alarm*, 553 F. Supp. 2d at 210. "Out-of-pocket litigation costs are generally recoverable if they are necessary for the representation of the client." *Tri–Star Pictures, Inc. v. Unger*, 42 F.Supp.2d 296, 306 (S.D.N.Y. 1999). Such costs may include the filing fee, *Prot. One Alarm*, 553 F. Supp. 2d 201, 210 (E.D.N.Y. 2008); the costs of transcripts and messenger services, *Pastre v. Weber*, 800 F. Supp. 1120, 1123 (S.D.N.Y. 1991); and the costs of photocopying, postage, exhibits, typing, transportation and parking fees, *Kuzma v. IRS*, 821 F.2d 930, 933 (2d Cir. 1987). The costs of online research are considered an element of the attorney's fee award. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004) ("the charges for ... online research may properly be included in a fee award").

*Hilton v. Int'l Perfume Palace, Inc.*, No. 12-CV-5074 (JFB) (GRB), 2013 WL 5676582, at *9 (E.D.N.Y. 2013). In considering a request for an award of attorneys' fees, the standard is somewhat higher:

8

> The Lanham Act permits an award of reasonable attorneys' fees in exceptional circumstances. 15 U.S.C. § 1117(a). Exceptional circumstances include those "where a party has willfully misappropriated a mark or has defended an action in bad faith." *Champagne*, 36 Fed. App'x at 19.

*Hilton*, 2013 WL 5676582, at *10. In this case, the evidence of defendants' extensive use of plaintiff's marks, which continued after the commencement of litigation, combined with their default, renders this an exceptional case warranting an award of fees. *See, e.g.*, *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 166 (E.D.N.Y. 2016) ("Courts have also granted attorneys' fees to prevailing Lanham Act plaintiffs where the defendant defaulted.").

At the same time, "[i]f a court finds that . . . time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Vanacore v. Expedite Video Conferencing Servs., Inc.*, No. 14-CV-6103 (GRB), 2019 WL 96243, at *3 (E.D.N.Y. Jan. 3, 2019) (quoting *Melnick v. Press,* No. 06-cv-6686 (JFB) (ARL), 2009 WL 2824586, at *6 (E.D.N.Y. Aug. 28, 2009) (citation omitted)). "Courts routinely make an adjustment for time expended by attorneys performing paralegal, clerical or administrative tasks." *Nicaisse v. Stephens & Michaels Assocs., Inc.*, No. CV 14-1570 (JS)(GRB), 2016 WL 4367222, at *8 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570(JS)(GRB), 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016) (citing *E.S. v. Katonah-Lewisboro Sch. Dist.,* 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011) ("A court may make [across the board percentage] reductions when attorneys engage in less skilled work, like filing and other administrative tasks [such as] ... faxing and mailing documents, making copies, filing, scanning, preparing documents for electronic filing, electronic file management, binding documents and Bates stamping")), *aff'd* 487 F. App'x. 619 (2d Cir. 2012).

9

Plaintiff seeks an award of $63,265.00 representing "billed" attorneys' fees, for which it provides sufficient documentation. *See* DE 45-5 at 4, Ex. A. This is a surprising increase from the fees sought upon plaintiff's first motion – at which time plaintiffs sought billed and unbilled fees totaling $45,617.50 – particularly given that the interim period involved little other than administrative duties. *See* DE 28-5 at 3. Furthermore, in the main, the total sought seems large for a matter that ultimately resulted in a default judgment (though this matter was slightly more complicated than a simple default). *See, e.g. Curves Int'l, Inc. v. Negron*, No. CV 11-2986 ADS GRB, 2012 WL 4490542, at *7 (E.D.N.Y. Aug. 31, 2012), *adopted by*, No. 11-CV-2986 ADS WDW, 2012 WL 4490553 (E.D.N.Y. Sept. 28, 2012) (approving $15,000 in legal fee upon a default judgment in trademark case).

Examination of the detailed billing records demonstrates that the rates charged are consistent with market rates and commensurate with the experience levels of the professionals involved in this matter, which involves specialized litigation skills. The tasks performed and hours expended generally appear reasonable on the information provided. However, comparing the work of national and local counsel suggests that there is some duplicative billing, as well as instances of attorneys performing clerical work. *See, e.g.*, DE 45-6 at 31, 36 (local and national counsel "analyzing" same matters; partner billing for time related to service of copy of court papers). Thus, while generally speaking the sum sought is consistent with a "lodestar" analysis, given the increase from the first to second default judgement and the presence of duplicative billing, the undersigned recommends a 35% reduction of the fees sought. Finally, plaintiff seeks an additional $3,034.00 in "unbilled" amounts, "mostly involving work on the Renewed Motion for Default Judgment and accompanying documents," but fails to submit sufficient documentation for this amount. DE 45-5 at 4; *see N.Y. State Ass'n for Retarded Children, Inc. v.*

10

*Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) ("[T]he omission [of contemporaneous time records] precludes an award of attorney's fees for time spent preparing and litigating the fee application.").

Considering all of these factors, the undersigned recommends a 35% across-the-board reduction of the "billed" amounts sought, and no award of the undocumented "unbilled" sums. Thus, the undersigned recommends award of attorneys' fees totaling $41,122.25. Finally, plaintiff seeks an award of $1,893.59 in costs, which amounts are fully documented and reasonable. *Id.* at 5, Ex. A.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the default judgment motion be GRANTED, that damages be awarded in the amount of $70,000, that legal fees be awarded in the amount of $41,122.25 and plaintiff recover costs of $1,893.59 and that the plaintiff be awarded the injunctive relief sought. Counsel for plaintiff will file an amended proposed judgment consistent with the recommendations herein for consideration by the district judge.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of**

**Appeals.** *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object)*; Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir.2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.") *cf. Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). This is particularly true, where, as here, a party has been "warned of the consequences of not objecting to the Magistrate's findings." *Mejia, supra.*

Dated: Central Islip, New York
       March 11, 2019

                                             /s/ Gary R. Brown
                                             GARY R. BROWN
                                             United States Magistrate Judge